Heman v. Britton.

HEMAN, *Receiver, Appellant,* v. BRITTON *et al.*

1. **Corporations**: INSURANCE: BONDS OF COMPANY: CONTRACT. Bonds, forming a part of the assets of a life insurance company which is closing up its business and effecting a re-insurance, which are assigned for the protection of sureties upon an indemnifying bond, given by the company re-insuring to that with which it re-insures, under a contract that after the liability of the sureties is at an end, such bonds shall be apportioned among the stockholders of the company re-insuring, the bonds, on such apportionment, become the property of the stockholders against all the world, except the creditors of the company.

2. —— : —— : TRUST: EQUITABLE LIEN. But the assets of the company so received by its stockholders, constitute a trust fund for the payment of the debts of the company, and an equitable lien exists against them in favor of the creditors which may be enforced, as the directors and stockholders of the company re-insuring, and not the creditors, must answer for the failure of the company with which it re-insures to comply with its contract.

3. —— : —— : RECEIVER: COSTS AND DEBTS. A receiver of the re-insuring company, appointed upon its being declared insolvent, is entitled to resort to the said bonds so distributed among the stockholders, only so far as necessary to pay the debts and reasonable costs of the receivership, and he is to be charged with all moneys and property in his hands and credited for the allowed demands in favor of creditors paid and to be paid, and reasonable costs of the receivership.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Dryden & Dryden* and *B. H. Dye* for appellant.

(1) The referee's findings both of law and fact were right. The exceptions to his report should have been overruled. The corporate power of the company under the law in force at the time it was incorporated was in the directors only. G. S. 1865, p. 355, sec. 7; p. 360, sec. 36. And by that law the special power of distributing the assets of the company, was also bestowed upon it. G. S. 1865, p. 364, sec. 51. The corporate power being vested by law in the directors, could not be exercised by the stockholders, even if all were present and assenting. Green's Brice's Ultra Vires [Am. Ed.] pp. 390, 394, and notes. But in fact there was no meeting of the stockholders, and no attempt at any corporate action by them as such. (2) If the referee had even found that the respondents held the bonds in trust for the stockholders, still, under the evidence, the plaintiff would have been entitled to a decree subjecting so much of the bonds, or their proceeds, as might have been needed, to the payment of the debts of the company, the costs of the dissolution proceedings, the receivership and the litigation incident thereto. That the assets or capital of a corporation are a trust fund for its creditors which cannot be given away, or distributed to its stockholders, without being subject to be followed by creditors, and applied to the payment of debts, is a doctrine now too well established to need citation of authority. *Wood v. Dummer,* 3 Mason, 308; Thompson on Stockholders, sec. 10; *Gill v. Balis,* 72 Mo. 424; *Sawyer v. Hoag,* 17 Wall. 610; *Upton v. Trebilcock,* 1 Otto, 45. (3) It was error for the court, after sustaining respondents' exceptions to the referee's report, to enter a judg-

ment as upon the report. It should have re-committed the case to the same, or some other referee, for a new trial. The report of a referee stands in the place of the verdict of a jury, and, if confirmed, is made the basis of a judgment, with like effect as a special verdict. R. S. 1879, sec. 3623. In a case where all the exceptions are sustained, and they, in their nature, go to defeat all of the findings, surely there is nothing left upon which to base a judgment, and the only logical result would seem to be, that which the statute seems to prescribe in such a case, namely, a reference again for a new trial and a new report. R. S. 1879, p. 618, sec. 3623. Nor is this adverse to those decisions of our Supreme Court which hold that after a court has set aside the report of a referee it may proceed, taking the evidence returned by him, to make for itself a new and distinct finding of facts and law. *O' Neil v. Capelle*, 62 Mo. 208 ; *Moniteau Nat'l Bk. v. Miller*, 73 Mo. 192.

*Alexander Martin* also for appellant.

The receiver represents the creditors. He could not be an efficient representative of them if he was concluded by every act that concludes the company. He can recover assets which the company would be estopped from recovering. In looking at the substance of things, equity will sometimes clothe intentional efforts with the raiment of accomplished facts. This is done in furtherance of justice between contracting parties. But it will not do this if the effect of it is to destroy a right or lien in a third party, which is superior to the rights of both the contracting parties, as in this case. Justice would not be advanced by such a construction of the dealings between the company and its stockholders. *Alexander v. Relfe*, 74 Mo. 495 ; *Hayes v. Kenyon*, 7 R. I. 136. It is settled in this state that the assets of a corporation constitute a trust fund for the benefit of its creditors.

An equitable lien exists in their favor which equity will protect and maintain in all proper proceedings for their benefit. This lien outranks the lien of the stockholders. Their shares belong to them subject always to the payment of all debts and obligations incurred by the company. When the assets of a company have been distributed in violation of the lien of creditors, equity will interfere to restore them to their subject condition. *Bartlett v. Drew*, 57 N. Y. 587; *Hastings v. Drew*, 76 N. Y. 9; *Rieds v. Eatonton Man'f'g Co.*, 40 Ga. 104; *Sawyer v. Hoag*, 17 Wall. 610. A *fortiori* will it interfere as in this case to protect and maintain the lien of creditors before actual distribution.

*Overall & Judson* for respondents.

A corporation may distribute its assets among its stockholders after providing for the payment of its debts. Morawetz on Private Corporations, sec. 573.

BLACK, J.—The plaintiff was appointed receiver of the DeSoto Mutual Life Insurance Company in 1878 in a suit instituted by the superintendent of insurance, and by which suit the company was adjudged to be insolvent. By this suit the plaintiff seeks to require the defendants to account for and turn over to him eleven bonds of the denomination of one thousand dollars each, and the interest thereon. The defendants received the bonds under the following circumstances:

The DeSoto Insurance Company ceased to do business, that is, to take new policies, in 1871, and then reinsured with the Republic Insurance Company of Chicago. That company became insolvent and the De-Soto was required to take care of its outstanding policies, of which there were only fifty-four in number. To that end the DeSoto, in 1874, made a contract with the Mound City Insurance Company, which in substance is as

follows : The Mound City agreed to assume and pay all losses then existing or that might thereafter accrue upon the fifty-four policies, to pay all other liabilities of the DeSoto, there then being some other contested demands ; and to cause to be released and turned over to Lionberger, Ballantine and Britton, in trust for the stock-. holders of the DeSoto, one hundred thousand dollars of bonds and other securities, which the DeSoto then had on deposit with the state insurance department, by the substitution of other securities therefor. In consideration of all this the DeSoto agreed to pay $20,019, and also to give the Mound City a bond in the sum of ten thousand dollars, with Ballantine and these defendants, Lionberger, Tutt, Johnson and Burr, as securities, conditioned to indemnify the Mound City against all demands against the DeSoto, except those arising upon said fifty-four policies. The DeSoto also agreed to cause all of its stock to be assigned to such person or persons as the Mound City might designate, the assignee, however, not to participate in the division of the securities and assets to be delivered to Lionberger, Ballantine and Britton, in trust for the. stockholders as before stated.

After this executory agreement had been signed by both of the companies and the indemnity bond executed, the board of directors of the DeSoto passed a resolution appointing Lionberger, Ballantine and Britton trustees to carry out the provisions of the contract, with authority "to receive the securities and assets of this company, and distribute the same among the individual stockholders of this company as their interests then may be shown by certificates of stock." On the same day and at the same meeting, the board made another order, or resolution, reciting the indemnity bond, and to save the said securities thereon from loss, ordered that eleven of the bonds of one thousand dollars each, "now the assets of the company," be deposited with a designated depos-

itory, subject to the joint order of the securities, with power to sell the same and pay any lawful demands that might be made upon the indemnity bond.

These defendants were directors and stockholders in the De Soto. The stock of that company was assigned as agreed ; the one hundred thousand dollars of securities were released and turned over to these trustees, eleven of the bonds were placed with the sureties, and the other assets of the DeSoto were divided among the stockholders. These defendants then gave to each stockholder a certificate stating the proportionate share of the eleven bonds to which he would be entitled at the expiration of five years, that being the length of time for which the securities were to stand liable on the indemnity bond. The five years had elapsed when this suit was brought.

1. While two resolutions speak of the bonds as the assets and securities of the " company," still the object and purpose of the whole of these transactions was to provide a fund for the payment of the outstanding policies and to make a distribution of the remaining assets among the stockholders. The three trustees had conferred upon them ample power to receive the property and distribute the same. There were but eleven of the stockholders, all of whom agreed to the entire transaction. The eleven bonds were not divided by an actual delivery, but they became the property of the stockholders in the proportions stated in the certificates, signed by the securities on the indemnity bond, as against all the world, except creditors of the De Soto. The claim made here by the receiver, that they remained the absolute property of the company cannot be maintained without disregarding the substance of these transactions.

2. The question still remains, whether he has any equitable claim to any part of the bonds. If he has, it is to work out an equitable lien in favor of creditors.

The Mound City, as we have seen, deposited its own securities with the insurance department, in lieu of those withdrawn by the De Soto. These were again withdrawn in 1875, and ten notes, each for ten thousand dollars, substituted therefor. These ten notes and thirty others, each for ten thousand dollars, made by the Mound City, under its then name of the St. Louis Life Insurance Company, were secured by a deed of trust on real estate. The name of that company was again changed to the Columbia Life Insurance Company, and in 1877 it became insolvent, was dissolved and a receiver appointed. The deed of trust was foreclosed, and upon an intervening petition of the plaintiff, he was adjudged to have a lien on one-fourth, of the proceeds, amounting to about seventy thousand dollars for the payment of the demands of the policy holders in the De Soto. Their demands, however, amount to only $5,569.17, and are, therefore, amply secured. If the receiver has money or property in his hands sufficient to also pay the costs of the receivership, then this suit should fail without further inquiry. But it seems the judgment on the intervening petition only goes to the extent of paying the debts due to policy holders, and the costs in that particular suit, and the receiver of the Columbia was adjudged to be entitled to the balance for the creditors of that corporation. The directors and stockholders of the De Soto took all of the assets of that corporation in 1874. The directors then resigned, and persons interested in the Mound City took their places ; these new directors held no meetings ; there was no need of their doing so, for the De Soto was a mere shell with no property whatever. That the assets received by the stockholders under these circumstances constituted a trust fund for the payment of the debts of the corporation is well settled. An equitable lien existed in favor of the creditors for the payment of their debts. *Gill v. Balis,* 72 Mo. 424 ; *Bartlett v. Drew,* 57 N. Y. 587; *Hastings v. Drew,* 76 N. Y. 9 ; *Sawyer v.*

*Hoag*, 17 Wall. 610.  These bonds still remain in the hands of the distributees, and this equitable lien may be enforced against them for anything that appears in this record.

There is no doubt but the directors and stockholders of the De Soto acted in perfect good faith and intended to make ample provision for the debts, but they, and not the creditors, must answer for the failure of the Mound City to comply with its contract.   They put the corporation out of their own hands and a receiver became necessary, both to claim the rights of that company as against the Columbia, and to adjust the demands of the policy holders of the De Soto.   The costs in doing all this are but incidental to the liquidation of these policies, and we cannot see why these costs are not as much a lien on the bonds as the debts themselves.   The receiver has no right to resort to the bonds further than is necessary to pay the debts and reasonable costs of the receivership.   He must, on the one hand, be charged with all moneys received from the foreclosure suit, and all other property in his hands ; and on the other, is entitled to credit for the allowed demands in favor of creditors paid and to be paid, and reasonable costs of the receivership.   We do not say that the bill of costs presented to the referee in this case is reasonable.   His costs that have not been, will, of course, be allowed by the court by which he was appointed, or not considered.

If all the parties interested in these bonds are not before the court, the defendants can have them brought in.   We do not see why all these matters cannot be settled in this suit; and to that end the judgment is reversed and the cause remanded.   All concur.