CORA HAGEMAN v. SOUTHERN ELECTRIC
RAILROAD COMPANY and UNITED RAIL-
WAYS COMPANY, Appellants.

Division Two, March 19, 1907.

1. **CORPORATION: Sale of Properties: Liability of Purchaser
for Debts: Trust Fund.** Where a corporation sells and conveys
all its properties of every kind to another corporation and
that company pays for the properties by paying the stock-
holders of the selling company a sound sum for each share
of stock held by them, with the understanding and agreement
that the directors of the selling company would convey to the
purchasing company, without additional charge, all its prop-
erties, including its franchise, and that was done, neither the
purchasing company nor its stockholders are liable to a sub-
sequent judgment creditor of the selling company, but the
money received by the stockholders of the selling company is
a trust fund for the payment of its debts, judgments and
obligations which were not liens at the time of the transfer.

2. ———: ———: ———: ———: **Non-lien Obligations.** The doc-
trine of equity that "the capital and other property of a cor-
poration are to be deemed, as between creditors and stock-
holders, a trust fund for the payment of debts, and when such
property has been divided among its stockholders, leaving debts
unpaid, the stockholders are in equity bound to refund," has
no application to a company which purchases, for full value,
the properties and franchises of a solvent company, when the
purchasing company is called upon to pay the judgment debt

of a creditor of the selling company which was not a lien on the properties of the selling company at the time of the transfer—there being no question of the solvency of the selling company, and no claim that it disposed of its properties for the purpose of defrauding its creditors, and there being no pretense of its lack of statutory power to make the transfer, and the transfer not being by dissolution, but by bargain and sale.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Blevins,* Judge.

REVERSED.

*George W. Easley* with *Boyle & Priest* for appellants.

(1) The proof offered to show that the United Railways Company assumed to pay the liabilities of the Southern Electric Company, was not admissible under the pleadings, and, if admitted, cannot be the basis of a decree in this cause. "A party can no more succeed upon a case proved but not alleged than upon a case alleged but not proved." 1 Beach's Modern Equity Pr., sec. 99. Such is the rule firmly established in equity practice in this State. Duncan v. Fisher, 18 Mo. 404; Irwin v. Chiles, 28 Mo. 570; Mead v. Knox, 12 Mo. 287; Harris v. Railroad, 37 Mo. 310; Newham v. Kenton, 79 Mo. 382; Christian v. Ins. Co., 143 Mo. 496; Dougherty v. Adkins, 81 Mo. 411. And such rule is consistent with all of the American equity practice. Wilson v. Cobb, 28 N. J. Eq. 177; Howell v. Sebring, 14 N. J. Eq. 84; Stevens v. Church, 41 Conn. 370; Doggett v. Sims, 4 S. E. 909; Gorham v. Parsons, 119 Ill. 299; Midmer v. Midmer, 26 N. J. Eq. 299; Francis v. Bertrand, 26 N. J. Eq. 213; Kelly v. Kelly, 54 Mich. 30; Hunter v. Hunter, 10 W. Va. 264; Elyton, etc., Co. v. Iron City, etc., Works, 20 So. 51; Skimer v. Bailey, 7 Conn. 496; Edwards v. Brightly, 12 Atl. 91; Hawes v. Dobbs, 137 New York 465.

(2)  The contention made for the respondent, that the property of the Southern Electric Railroad Company, at the time of its transfer to the United Railways Company, was a trust fund for the payment of the debts of the corporation, including the alleged liability to the respondent, we contend, has no application to this character of case.  We are not contending that under certain circumstances the property of a corporation is not a trust fund for the payment of the debts of the company.  Our contention is that in this case nothing is either alleged or proven which brings any one of the defendants within that rule.  We do not contend that, where the property of a corporation has been divided among its shareholders, without provision being made for the payment of debts, the shareholders who receive that property or that for which it was sold cannot be held liable for the debt.  We do not contend that, where the property of a corporation has been sold, leaving valid debts unpaid, and the proceeds of the sale divided among the stockholders of the company, such stockholders are bound in equity to refund and make good to the creditors such debts and liabilities.  That does not mean that where one has bought in good faith the stocks and properties of a corporation from its previous stockholders and paid a sound price therefor, and the price paid distributed to the original shareholders, the purchaser of such stocks and properties is responsible to the creditors of the corporation whose stock and properties were so purchased and paid for.  The very authorities on which respondent most relies are like the Reinhard case in 114 Mo., and show that it is the original stockholders that must be looked to, the stockholders who divided the price of the stock and property among themselves that must be responsible to the creditors, and not the purchasers.  Mo. Lead M. & S. Co. v. Reinhard, 114 Mo. 232; Powell v. Railroad,

42 Mo. 63; Hoard v. Railroad, 123 U. S. 222; Fogg v. Blair, 133 U. S. 534. The decisions quoted by respondent are not antagonistic to the propositions herein advanced; an anlysis will reveal that those in similar cases which might be cited, as the recent case of Berthold v. Land & Lumber Company, 91 Mo. App. 240, are based upon equitable doctrines and involve the recognition and enforcement of equitable rights and liabilities. Birge v. Railroad, 100 Mo. App. 465; Fogg v. Blair, supra; Railroad v. Ham, 114 U. S. 594; Hollins v. Brierfield, etc., Co., 150 U. S. 385; Graham v. Railroad, 102 U. S. 148; McDonald v. Williams, 174 U. S. 403; 1 Thomp. on Corp., sec. 263; Bruffett v. Railroad, 25 Ill. 353; Memphis Water Co. v. Magens, 79 Tenn. 37; Milling Co. v. Com. Co., 128 Mo. 491; Bank v. Packing Co., 138 Mo. 59; Calihan v. Powers, 133 Mo. 498; Schufeldt v. Smith, 131 Mo. 286; Myers v. Folding Chair Co., 130 Mo. 195.

*Seneca N. & S. C. Taylor* and *Charles Erd* for respondent.

(1) One who has recovered a judgment in a Federal court may prosecute in a State court a proceeding in equity, to subject to its satisfaction property which cannot be reached under execution. Bush v. Arnold, 50 Mo. App. 8; Chicago Bank v. Sloman, 42 Neb. 350; Bullett v. Taylor, 34 Miss. 743; Brown v. Bates, 10 Ala. 432; Ballon v. Loeb, 78 Wis. 407; Lowell v. Warren, 25 Minn. 9; Wandting v. Straw, 25 W. Va. 705; Thompson v. Lee Co., 22 Pa. 206; McConnelly v. Hargraves, 48 Ga. 50; Freeman on Judgments (4 Ed.), sec. 578; 3 Thompson on Cor., sec. 3571. (2) A demand arising *ex delicto* may be enforced against the stockholders of a corporation under the constitutional provision that dues from a corporation shall be secured by the individual liability of stockholders. Flinnicker v. Marshall, 28 L. R. A. 404; Rider v. Fritchey,

15 L. R. A. 515; Haywood v. Shreve, 44 N. J. L. 104; 18 Am. and Eng. Ency. Law (2 Ed.), 846. (3) The capital stock and other property of a corporation are in equity, as between creditors and stockholders, deemed to be a trust fund for the payment of the debts and liabilities; and where such property has been divided among the stockholders, leaving debts and liabilities unpaid, the stockholders are bound in equity to refund. Missouri L. & M. Co. v. Reinhard, 114 Mo. 219; Heman v. Britton, 88 Mo. 549; Eppright v. Nickerson, 78 Mo. 490; Powell v. Railroad, 42 Mo. 68; Bertholdt v. Lumber Co., 91 Mo. App. 240; Beyer v. Trust Co., 63 Mo. App. 526; Williams v. Boyce, 38 N. J. Eq. 364; Hastings v. Drew, 76 N. Y. 9; Bartlett v. Drew, 57 N. Y. 387; Story, Equity Jurisprudence (13 Ed.), p. 602, sec. 1252; Taylor on Private Corp., secs. 651, 654, 655, 656; 2 Beach on Equity Jurisprudence, secs. 906 and 908; 3 Thompson on Private Corp., secs. 2946, 2951; 2 Morawetz on Corporations, sec. 780. (4) Where the assets of a corporation have been distributed among the stockholders, leaving debts and liabilities due to third parties, they may in equity obtain a decree compelling shareholders to satisfy such claims. This doctrine has never been disputed in Missouri. Missouri L. M. & S. Co. v. Reinhard, 114 Mo. 232; Heman v. Britton, 88 Mo. 549; Roan v. Winn, 93 Mo. 503; Bertholdt v. Land & Lumber Co., 91 Mo. App. 240; 1 Cook on Corporations (4 Ed.), sec. 222; 3 Thompson on Private Corporations, sec. 2946. (5) The doctrine is fundamental that a person holding a claim against a corporation, either for liquidated or unliquidated damages, has a lien on the corporation assets prior and superior to a shareholder, and if the shareholder appropriates such assets to his own use, such creditor may have relief in equity, because of such lien. Real Estate Institute v. Collonious, 63 Mo. 295; Hunter v. U. S., 30 U. S. 173; Good Templars, etc., v. United

Life Ins. Asso., 59 Fed. 220; Pitch v. Anthony, 8 Mass. 536; Bowman v. Engine Co., 36 Wis. 207; Stucker v. Yoner, 33 Iowa 177; Gould v. Hayes, 19 Ala. 436; Couch v. Terry, 12 Ala. 225; Andrews v. Murphy, 12 Ga. 431; Martin v. Densford, 3 Blackford (Ind.) 295; Orston v. County, 5 Ky. Law Rep. 686. (6) Where the shareholders, as such, appropriate to their own use the assets of a corporation with the consent of the board of directors, an action at law by a judgment creditor will not lie against said shareholders, because such assets constitute trust property which can be reached only by a proceeding in equity. Roan v. Winn, 93 Mo. 503; Lackland v. Garesche, 56 Mo. 267; Powell v. Railroad, 42 Mo. 68; Weil v. Tyler, 38 Mo. 545; Firebaugh v. Stone, 36 Mo. 111; Reagan v. Railroad, 21 Mo. 30; Beyer v. Trust Co., 63 Mo. App. 527; Bachman v. Lewis, 27 Mo. App. 81; McLane v. Eastman, 21 Hun 312; Von v. Grant, 16 Mass. 7; Bartlett v. Drew, 57 N. Y. 587; Osgood v. Laytin, 3 Keys 521. (7) An ordinary business corporation may cease to do business and wind up its affairs, whenever a majority of the shareholders deem this to be advisable; but the franchise conferred upon the shareholders by the State is not extinguished by a mere cessation of business thus brought about. The company still continues to be a corporation in the eye of the law, and may sue and be sued in that capacity. 2 Morawetz on Private Corporations, secs. 1004, 1010, 1035; Bank v. Pahquioque, 14 Wall. 383.

FOX, P. J.—This is a proceeding in equity, begun in the circuit court of the city of St. Louis, having for its object the subjection of certain dividends accruing on the preferred stock of the United Railways Company, a corporation, which will hereafter be called the United Company, to the payment of a judgment rendered against the Southern Electric Railroad Company, which will hereafter be called the Southern Com-

pany, in the circuit court of the United States for the Eastern District of Missouri.

There is but little, if any, disagreement regarding the facts of the case. The real controversy is one of law rather than one of fact.

There is no point made against the pleadings, and for that reason they will not be noticed.

The facts in the case are as follows:

The Southern Company and the United Company were organized and existing under and by virtue of the laws of the State of Missouri, and were at all the times hereinafter mentioned common carriers of passengers for hire, in the city of St. Louis; on and prior to September 16, 1899, the par value of the capital stock of the Southern Company was $1,500,000, and was actually worth $2,000,000 over and above its liabilities; on the 13th of November, 1900, plaintiff brought suit in the United States Circuit Court against the Southern Company to recover damages for personal injuries received by her in the month of November, 1898, caused by the negligence of that company, and on October 6, 1901, she recovered a judgment against it for the sum of $9,500, which was, on appeal to the United States Circuit Court of Appeals, duly affirmed; prior to the institution of this suit an execution was regularly issued on said judgment and returned *nulla bona;* on or prior to September 16, 1899, the United Company acquired the capital stock of all the street car companies in the city of St. Louis excepting the St. Louis & Suburban Railway Company, twelve in number, in the manner hereinafter stated, and one of that number was the Southern Company; on September 20, 1899, the latter company, by a deed of *grant, bargain* and *sale,* duly executed, conveyed to the United Company all its franchises and tangible property of every kind and description, including all its real, personal and mixed property, situated in the

city and county of St. Louis; the United Company paid to the shareholders the sum of one hundred and forty dollars for each and every share of stock of the Southern Company, with the understanding and agreement with the stockholders and directors of the latter company that it would convey to the former, without additional charge, all its rights, franchises and property of every kind and description, and in pursuance to that agreement the deed before mentioned was executed; on the 20th day of September, 1899, the United Company executed a deed of trust in favor of the St. Louis Trust Company, as trustee, conveying all its property of every kind and description, securing the payment of a bonded indebtedness of that date, issued by the said United Company, in the sum of $28,292,000, said bonds having thirty-five years to run, bearing four per cent interest per annum, payable semiannually in January and July of each year; said Trust Company accepted said trust, and said bonds have been negotiated and are held by others.

Thereafter, on the 30th day of September, 1899, said United Company, as a lessor, by authority of its board of directors, executed a lease in favor of the Transit Company, lessee, which lease was to begin the 1st of October, 1899, and terminate the 1st of April, 1939, and by the terms of said lease all the property above described, so acquired by the said defendant United Company, including all franchises, rights and privileges, were let and leased to said Transit Company, authorizing and empowering said Transit Company to operate said roads, which lease also included the other street railways in the city of St. Louis acquired by said United Company; by the terms of said lease, the said Transit Company agreed, at its own proper cost and expense, and without deduction from the rent provided for by said lease, to maintain, work, operate, use and

run, and keep in public use said demised railways, in the same manner as said United Company, as the owner or lessor thereof, was then or at any time thereafter might be required to do, and to keep the property in good repair, at its own cost and expense, without any deduction from the rent so to be paid and reserved in said lease; by the terms of said lease, said Transit Company agreed to pay to said United Company a net annual rental of five dollars a share upon all the preferred stock of said United Company then outstanding, or which might thereafter be issued by said United Company, with the consent of the Transit Company, said rental to be paid quarterly on the tenth of January, April, July and October, each and every year, for the period covered by said lease; the first quarterly payment, by the terms of said lease, was required to be made on the 10th day of April, 1900; such payment to be made at the office of the Transit Company in the city of St. Louis, or at the agency of said Transit Company in the city of New York, either or both, as said Transit Company might from time to time determine; by the terms of said lease, said Transit Company was also required to pay said United Company $1,000 per year, for the purpose of defraying the expenses and maintaining the proper existence of said United Railways Company and said Transit Company also, by the terms of said lease, agreed to pay all taxes and assessments and water rents which might be assessed upon the real estate, personal property, franchises, capital stock, business, rental, income, dividends and indebtedness of said United Company or any of the lines of railway or property leased or operated by it, and said Transit Company also agreed, by the terms of said lease, to pay the interest accrued, and to accrue, as the same became respectively due and payable, on all the bonds that had been issued and outstanding by said United Company

or any of the subordinate companies, whose property and franchises said United Company had acquired; among the bonds upon which said Transit Company assumed to pay the interest, a part thereof was issued by the Southern Company, to-wit: 6 per cent bonds, dated May 6th, 1890, due May 1, 1915, $336,000; also 5 per cent bonds of date August 1, 1896, due August 1, 1916, $200,-000, aggregating $536,000 all told. Said lease also provided that the Transit Company should, during the continuance thereof, apply all net surplus earned by it, over and above six per cent annual dividends upon the $20,000,000 of capital stock, which the Transit Company was authorized to issue, or so much thereof as might, from time to time, be outstanding, to the betterment, improvement or extension of the property on railway lines, then owned or which might thereafter be acquired by said United Company, defendant, or to the redemption, payment or retirement of the mortgage indebtedness of said United Company, or its subordinate companies.

On or about September 16, 1899, the United Company increased its capital stock to $45,000,000, of which $20,000,000 was preferred and $25,000,000 was common stock, divided into shares of $100 each, and prior to the institution of this suit the latter company had issued about $9,000,000 of preferred and $18,000,000 of common stock.

The rental before mentioned was at all times promptly paid—the first installment was paid on April 10, 1900. The said dividends were paid direct to the United Company by the Transit Company, and the former then paid them over to its stockholders.

The Transit Company was also a party defendant. On August 25, 1903, a decree was rendered in the case at bar in favor of the plaintiff and against the Southern Company and the United Company for the sum of $10,730.30, and the decree was in favor of the Transit

Company. From this decree the United Company, alone, brought the case to this court by appeal.

## OPINION.

## I.

The principal question presented by the record in this case for this court's decision is, do the facts before stated entitle the plaintiff to equitable relief against the United Company?

The plaintiff bases her right of recovery against the United Company upon the theory that when it acquired the capital stock of the Southern Company and thereafter, for a nominal consideration, acquired all the franchises, money, choses in action, and all other real, personal and mixed property of the latter, it thereby rendered said company insolvent and left it with no property out of which her execution could be satisfied; and that the property so acquired by the United Company was the moneyed value upon which a part of the increase of its capital stock was bottomed, the value of which at the time of the transfer was $2,000,000, and that in equity and good conscience it should be held liable for the payment of the debts and obligations of the Southern Company up to the amount of the $2,000,000 worth of assets received by it. In other words, her contention is, the obligations of the Southern Company should follow its assets as trust funds into the hands of the United Company. In order to support that contention she invokes the well-known principle of equity, that "it is a favorite doctrine with the courts of equity that the capital stock and other property of a corporation is to be deemed, as between creditors and stockholders, a trust fund for the payment of the debts; and when such property has been divided among the stockholders, leaving debts unpaid, the stockholders are in equity bound to refund." [Missouri Lead M. &

S. Co. v. Reinhard, 114 Mo. l. c. 232; Heman v. Britton, 88 Mo. 549.]

This rule has no application to the facts of this case. It applies to that class of cases where a corporation sells or disposes of all its property and divides the proceeds thereof among its stockholders, without making provision for the payment of its outstanding obligations which existed at the time of the sale or the disposition of its property.

The United Company, the defendant in the case at bar, has not sold or disposed of its property, or distributed the proceeds thereof to its stockholders, but, upon the other hand, the fact is, it purchased the franchises, capital stock, money, choses in action, and all the other real, personal and mixed property of the Southern Company in good faith and paid a sound price therefor, namely, one hundred and forty dollars a share. It does not stand in the same relation to the creditors of the Southern Company that the stockholders of the latter company do. It has no property or money in its possession which it has not paid full value for; while, upon the other hand, those stockholders have in their hands the $2,000,000, the sum the United Company paid them for the franchises, stock and properties of the Southern Company. That money is a trust fund for the payment of the debts and obligations of the Southern Company.

The very cases mainly relied upon by plaintiff in support of her contention hold that the stockholders of the latter company hold the money so paid them, as trustees, for the use and benefit of the creditors of that company. [Heman v. Britton, 88 Mo. 549; Missouri Lead M. & S. Co. v. Reinhard, 114 Mo. l. c. 232; Bertholdt v. Land & Lumber Co., 91 Mo. App. 240-1; Slattery v. St. Louis & N. O. Transportation Co., 91 Mo. l. c. 227.]

## II.

At the time the United Company purchased the franchises, stock and properties of the Southern Company, it possessed the following powers, to-wit:

"Seventh. To purchase, lease or acquire by other lawful contract, which shall include the right to purchase the capital stock and bonds of other street railroad companies, and to hold and dispose of the same, and to hold, use and operate any street railroad or roads with all and singular its or their franchises and properties of every description belonging to any other street railroad company or corporations."

Then follows a provision as to the manner of the stockholders authorizing such purchase, to-wit:

"Eighth. To sell, lease or dispose of by any other lawful contract, to any other street railroad company, its railroad rights, franchises, including the right to be a corporation, and all and singular its other properties of every character and description."

Then follow provisions for the assent of the holders of its capital stock to such sale or lease. [R. S. 1899, p. 393, sec. 1187, paragraphs 7 and 8.]

Under this statute there can be no doubt as to the legal right and power of the United Company to purchase and hold the franchises and properties of the Southern Company, and it is alleged by the plaintiff that the former company did on the 19th day of September, 1899, acquire by warranty deed all the property and franchises of the latter, and this brings us to the consideration of the question, is the United Company, under the facts of this case, bound by the law to pay the non-lien obligations of the Southern Company existing at the time of the sale? This court in passing upon a case similar to this, which arose under a similar statute, held, that the "corporation was authorized by the act to transfer and assign by a vote of a majority in interest of the stockholders, all their effects and assets,

rights and privileges, . . . . and upon such transfer and acceptance the company was 'to cease to have a corporate existence,' and the road was thenceforth to be styled the 'West Branch of the North Missouri Railroad;' their 'franchises' were to become 'completely vested in the North Missouri Railroad Company.' . . .

"The deed certainly transferred and conveyed everything that could be transferred or assigned under this act. This was not a mere amalgamation or consolidation of the two corporations into one. By the very terms of the statute and the deed, the first corporation was extinguished—the second only continued to exist. Where several railroad companies were, by virtue of the act of union, 'merged in and constituted one body corporate,' under the name of one of them, and all were continued in existence, it was treated as a consolidation. [Railroad v. Howard, 13 How. 333.] An amalgamation implies such a consolidation as to reduce the companies to a common interest. [2 Redf. Rail., 659.] Such was not the case here. One was absolutely extinguished, as was held in a similar case in Railroad v. Hunt, 20 Ind. 463; State ex rel. v. Bailey, 16 Ind. 46.

"As to what the effect was upon the corporate franchises, we need not inquire very minutely. It may safely be said that such of then as were personal in their nature, and incapable of being transferred to another, were revoked or surrendered, and were extinguished. There is no question here of the power of the Legislature to pass this act, nor of the power of this corporation to do this thing with the consent of all the stockholders, and, for all the purposes of this case, such consent may be presumed. As to the other corporation, whether any franchises were transferred or not, the act conferred upon that company all the additional franchises and powers that were necessary to enable them to accept this transfer and build the West Branch of the North Missouri Railroad. . . .

"The Chariton and Randolph Railroad Company was not compelled to make this transfer. It was a matter of contract, and it is clear that the conveyance was made upon a valuable consideration, and to a *bona fide* purchaser. It was authorized by law, and it was effectual to convey the property. [Bruffett v. Railroad, 25 Ill. 356.] By the old common law, it seems, a dissolution of the corporation extinguished the debts; but courts of equity in such case will consider the property and effects as a trust fund for the payment of creditors and for the shareholders, into whosesoever hands they may come, subject to such a trust. [Ang. Corp. sec. 779a.] A corporation cannot give away the effects belonging to it, to the prejudice of creditors. [Goodwin v. McGehee, 15 Ala. 232; 2 Redf. Rail., 624.] A court of equity will follow the trust fund into the hands of other than *bona fide creditors and purchasers*. [Curran v. Arkansas, 15 How. 307; Bacon v. Robertson, 18 How. 480; Hightower v. Thornton, 8 Ga. 503.] There was no averment and no proof that this defendant held this property otherwise than as a *bona fide* purchaser for a valuable consideration. The judgment of the court below did not proceed upon any equity of this nature, upon the theory that the debtor corporation still existed under the corporate name of the defendant, and that the property which belonged to it was subject to his demand in this suit. According to the view we have taken of the case, this proceeding was entirely erroneous.

"Judgment reversed and petition dismissed." [Powell v. Railroad, 42 Mo. l. c. 67.]

Discussing this same question, the Supreme Court of the United States uses this language: "We do not question the general doctrine invoked by the appellant, that the property of a railroad company is a trust fund for the payment of its debts, but do not perceive any place for its application here. That doctrine only

means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to a *bona fide* purchaser for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence.'' [Fogg v. Blair, 133 U. S. l. c. 541.]

The same court in discussing *simple contract creditors of corporations* whose claims had not been reduced to judgment, used this language:

''A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and if there be any exceptions thereto they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions, nor all together, give to these simple contract creditors any lien upon the property of the corporation, nor charge any direct trust thereon.'' [Hollins v. Brierfield Coal & Iron Co., 150 U. S. l. c. 385; McDonald v. Williams, 174 U. S. 403.]

The Supreme Court of Illinois used this language in the discussion of this question: ''Had such a sale

been made, the property thus transferred would have thereby become released from the payment of the debts, not a prior lien; nor would the future earnings of the road, made by such a purchaser, be liable to the payment of such debts. In case this company had become insolvent, and legally transferred its charter, rights, franchises, privileges and property, and the purchasers become again incorporated, the new company would not be liable for the unpaid debts of the old organization." [Bruffett v. Railroad, 25 Ill. 1. c. 356; 1 Thompson on Corp., sec. 263.]

In the Wabash case, the Supreme Court of the United States said: "It was contended that the property of the Toledo and Wabash Railway Company was a trust fund for all its creditors, and that upon the consolidation the Toledo, Wabash and Western Railway Company took the property of the Toledo and Wabash Railway Company charged with the payment of all its debts. The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense that when the corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled in equity to have their debts paid out of the corporate property before any distribution thereof among the stockholders. It is also true, in the case of a corporation, as in that of a natural person, that any conveyance of property to the debtor, without authority of law, and in fraud of existing creditors, is void as against them." [Railroad v. Ham, 114 U. S. 1. c. 594.] To the same effect are the following cases: Milling Co. v. Commission Co., 128 Mo. 491-495; Atlas National Bank v. Moran Packing Co., 138 Mo. 59; Calihan v. Powers, 133 Mo. 481-498; Schufeldt v. Smith, 131 Mo. 1. c. 286; Meyer v. Folding Chair Co., 130 Mo. 195.]

We have been unable to find a single case supporting the trust fund theory, except where the corporation

was insolvent, or where it had disposed of its property for the purpose of defrauding its creditors, or where a dissolution of the corporation had taken place and the assets placed in the hands of a trustee for the payment of the debts, etc., or where it had no power or authority whatever to make the sale or transfer of its property.

In the case at bar there is no pretense that the Southern Company was insolvent, or that a dissolution had taken place, or that it disposed of its property for the purpose of defrauding its creditors, or that it had no power to make the sale of its franchises and effects to the United Company.

The Southern Company, by the statute before quoted, was authorized to sell, transfer and assign by a vote of a majority in interest of the stockholders all its franchises, rights, privileges and properties to the United Company, and the same statute empowered the latter company to purchase said properties. The deed from the former to the United Company transferred and conveyed everything that could be transferred and assigned under that statute, which included all its franchises, money, choses in action, and all other real, personal and mixed property, for which it paid the stockholders of the Southern Company the sum of $2,000,000. It could not have paid it to anyone else, because no one else owned it. It was not owing to the Southern Company because the United Company had purchased the company, and a payment made to it would have been no payment at all. That would simply have been transferring the money from one till of the United Company to another, which, we dare say, would have been willingly paid by the right hand and gladly received by the left, and we apprehend that stockholders of the former would have entered a vigorous protest against such a payment. Nor could payment have been made to plaintiff and other persons

who had similar claims against the company, because that company's liability to plaintiff at that time had not been established by the judgment of the court. So, it must necessarily follow that when the United Company, in good faith, for a full and adequate consideration, purchased the Southern Company with all its properties, it acquired a good title thereto, free and clear of all claims and demands of whatever nature, which were not liens on the property at the time of the sale and transfer, and, as plaintiff's claim was not a lien on the property at that time, it must follow that she is not entitled to any relief in this case.

There are several other minor points made and discussed in the able briefs of both plaintiff and defendant, but they will not be noticed, as what has already been said fully disposes of the case on its merits.

The judgment of the circuit court should be reversed, and it is so ordered.

All concur.