## SATISFACTION OF JUDGMENT AGAINST A CONSTITUENT COMPANY.

Common Pleas Court of Hamilton County.

ALICE JEWETT v. THE FENTON DRY CLEANING & DYEING COMPANY, A CORPORATION.

Decided, April 9, 1919.

*Aid of Execution—Stock in Payment of Constituent Company But Issued to Individuals—Held Subject Against Said Constituent Company—Liability of an Indemnity Company and the United Company upon the Same Claim.*

1. The defendant and a number of other corporations engaged in the same business merged their interests and organized the United Company, under an agreement, whereby the latter was to pay for the assets of the constituent companies by issuing its stock in certain agreed amounts to them. The plaintiff at the time of such merger had an unliquidated claim for damages for personal injuries against the defendant. The United Company in supposed fulfillment of said contract issued its stock in the ascertained amount to F. and C., who were owners of all but a few shares of the defendant company, but issued no stock to the defendant company. Thereafter plaintiff secured judgment against the defendant manded to this court for execution. Execution was issued and returned "No goods." Upon proceedings in aid of execution to subject to the payment of the judgment, the stock in the United Company so issued to F. and C.; and also to subject the property of the United Company to the extent of the stock it should have issued to the defendant company,

*Held:* (a) The stock issued by the United Company to F. and C. in payment for the assets of the defendant company was held by F. and C. subject to the judgment of the plaintiff. *Pfisterer* v. *Traction Co.,* 89 Ohio St., 172, distinguished.

(b) The contract to issue stock to the defendant company was not carried out by the United Company, and to that extent the property of the United Company was also subject to the payment of the plaintiff's judgment.

2. Where an indemnity company issues a policy to another company indemnifying it against liability for personal injuries, and the contract provides that the indemnity company shall have exclu· sive charge of the defense of any action for such damages, and shall be liable only for loss actually sustained by the insured after payment of judgment; and where such indemity company assumes the defense in such action to the exclusion of the insured, and after execution is issued and returned "No goods," such company appears in court upon proceedings in aid of execution and re· sists such proceedings and the payment of the judgment, it makes itself liable to payment of the judgment, before the actual payment thereof by the insured.

DARBY, J.

The court of appeals of this county, on February 5, 1919, affirmed the judgment of this court for $3,500 in favor of the plaintiff, and on the same day remanded this cause to this court for execution of said judgment. Thereafter execution was issued on said judgment, which was returned February 18, 1919, "No goods." On the last named date, the plaintiff filed her affidavit setting out the facts above stated and further that "the defendant has property and money which ought to be applied to the payment of said judgment, but which the defendant unjustly refuses to apply thereto; that the Fenton United Cleaning & Dyeing Company, the Globe Indemnity Company, a corporation transacting business in Ohio, Thomas L. Morgan and Thomas T. Fenton are indebted to the defendant company or have moneys or other property in their hands and possession belonging to said defendant company."

An order was thereupon made requiring the persons named in said affidavit to appear in this court on the 25th day of February, 1919, and answer concerning defendant's property.

The hearing upon the said affidavit and order was had on February 26, 1919, but not being finished on said day was postponed, and on February 28, 1919, the plaintiff filed her supplemental affidavit setting forth that the defendant company had property which ought to be applied to the payment of said judg-

ment and "that Thomas T. Fenton, H. Bascom Fenton and Dudley O. Cross have various shares of preferred and common stock issued to them by the Fenton United Cleaning & Dyeing Company, the property of the defendant company, without consideration paid therefore; and the Fidelity & Deposit Company of Maryland, a corporation transacting business in Ohio, have moneys, credits and other property and are indebted to the defendant company," and an additional order was entered including the persons named in the supplemental affidavit.

Upon the conclusion of the hearing, which lasted several days, a motion was made by the plaintiff for an order subjecting the stock issued to Thomas T. Fenton, H. Bascom Fenton and Dudley O. Cross, to the satisfaction of the judgment in this case; also for an order against the Fenton United Cleaning & Dyeing Company to answer for the assets of the Fenton Dry Cleaning & Dyeing Company; also for an order upon the Fidelity & Deposit Company of Maryland to answer under its $5,000 policy for the amount of the judgment and costs herein; also for the appointment of a receiver to take charge of such assets and subject them to the payment of this judgment.

The facts of the case are that in December, 1915, the plaintiff was injured by reason of the negligent operation of an automobile belonging to the defendant company; that the defendant company was immediately informed of said accident and very shortly thereafter negotiations for a settlement opened between the counsel for the plaintiff and the defendant company.

The defendant company held a policy covering the automobile in question in the Fidelity & Deposit Company. That policy was in the usual form of such policies and contained an agreement by the deposit company to indemnify the defendant company—

"against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered, as the result of an accident occuring while this policy is in force, by any person or persons * * *."

An further:

"To defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim covered by the policy, whether groundless or not, for damages on account of bodily injuries    *    *    *."

"To pay all expenses, irrespective of the limits expressed in statement numbered 4 of the schedule of statements, incurred by the company in defending any suit, including any costs taxed against the assured and the interest accruing on that part of the verdict or judgment not in excess of the policy limits."

This agreement was subject to conditions; the only ones of importance in this case are as follows:

"A.    Upon the occurrence of an accident the assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the company at its home office in Baltimore, Maryland, or its authorized representative.    If a claim is made on account of such an accident the assured shall give like notice thereof with full particulars.    If thereafter any suit is brought against the assured to enforce such a claim, the assured shall immediately forward to the company at its home office every summons or other process as soon as the same shall have been served on him. The company reserves the right to settle any claim or suit.    Whenever requested by the company, the assured shall aid in securing information, evidence, and the attendance of witnesses; in effecting settlements; and in prosecuting appeals.    The assured shall at all times render to the company all co-operation and assistance within his power."

"D.    The assured shall not voluntarily assume any liability; nor interfere in any negotiations or legal proceedings conducted by the company on account of any claim; nor accept (except) at his own cost, settle any claim, nor without consent of the company previously given, incur any expense; except that he may provide at the time of the accident, at the cost of the company, such immediate surgical relief as is imperative."  ⸳

"H.    No action shall be brought against the company under or by reason of this policy, unless it shall be brought by the assured for a loss, defined hereunder, after final judgment has been

rendered in a suit, described hereunder, and within two years from the date of such judgment, to-wit: for a loss that the assured has actually sustained by the assured's payment in money—(a) of a final judgment rendered after a trial in a suit against the assured for damages on account of the negligence of the assured; (b) of the expenses (excluding any payment in settlement of a suit or judgment) incurred by the assured in the defense of a suit against the assured for damages on account of the negligence or alleged negligence of the assured.   The company does not prejudice by this conditions any defenses against such action that it may be entitled to make under this policy.''

The defendant company, upon receipt of notice of the accident, complied with the conditions of the policy by informing the deposit company of the same, and subsequently, when suit was brought, the deposit company took full charge of the defense of the cause, appeared in court upon all the proceedings, defended the action in court, prosecuted the proceedings in error, all of which appear from the record of the case.

In these proceedings in aid of execution, as originally instituted, the deposit company was not named, but another company, the Globe Indemnity Company was named.

The attorney representing the deposit company, insurer, appeared in this court and had charge of the interests of the defendant company.   He was not employed by defendant company to appear at any time in the case, and subsequently, when on the supplemental affidavit the deposit company was brought into the proceedings, the same counsel appeared, not only on behalf of the deposit company, but also on behalf of the defendant company, and while it appeared that the defendant company had its own counsel, who was in court during these proceedings, the representative of the deposit company practically had complete charge of the interests of the defendant company.

For sometime immediately preceding the accident referred to, in December, 1915, negotiations were had between the defendant company and a number of other companies engaged in similar

and allied businesses looking to a merger or consolidation of all of these companies into one. These negotiations resulted in an agreement between the defendant company and a number of other companies on the one hand, and Thomas L. F. Morgan on the other, whereby, in consideration of one dollar, each of the said companies agreed to transfer, assign and deliver to Morgan all of its and their business, assets, good will, choses in action, and all other properties and rights "all for the purpose of re-transferring, making over and assigning the same into a corporation to be incorporated under and by virtue of the laws of the state of Ohio, as provided for hereinafter." In said agreement it is further provided that said properties should be appraised and the appraised values "shall be taken as the values and basis for the apportionment and distribution of the capital stock in the said new corporation to and among the parties of the first part, in payment to them as the full consideration for their business, good will, assets, rights and properties of every kind and description, and for their transferring the same unto said new corporation through said party of the second part as aforesaid." It was understood and agreed "that each of the parties of the first part hereto, or their lawful successors or assigns, shall receive as and for full payment for its or their entire business, * * * as and for full consideration to each of said parties, of the first part therefor, preferred and common stock in said new corporation * * * ."

Under date of March 29, 1916, or thereabout, a general bill of sale of all the property of the defendant company was made to said Morgan; proceedings were had between the date of the first contract with Morgan and March 29, 1916, for the creation of the Fenton United Cleaning & Dyeing Company, which we will hereinafter call the United Company.

No stock of the United Company was ever issued to the defendant Company, as provided in said contract, but in a supposed fulfillment of the contract, on March 29, 1916, the defendant company signed a receipt for the shares of stock to be issued to it,

but the certificates were in fact issued to Thomas T. Fenton, H. Bascom Fenton and D. O. Cross. At the time of the appraisal of the property of the defendant company, for the purposes of this reorganization, the total net assets of said company were found to be $98,000. The stock of the defendant company was owned by Thomas T. Fenton, H. Bascom Fenton and D. O. Cross, excepting a few shares held by others. When the stock of the United Company was issued, apparently to pay for the assets of the defendant company, it was issued to Thomas T. Fenton, H. Bascom Fenton and D. O. Cross, in whose names the said certificates of stock still remain.

The defendant company is still in existence; its capital stock has been decreased to a nominal amount.

Upon this statement of facts, the plaintiff claims:

1. That the stock of Thomas T. Fenton, H. Bascom Fenton and D. O. Cross, in the United Company, should be applied to the payment of plaintiff's judgment;

2. That the property of the United Company, to the extent that it received assets of the defendant company, should be similarly applied:

3. That the $5,000 policy (or its proceeds) of the deposit company should be applied in payment of the judgment.

These proceedings are equitable in their nature and designed to reach the property of the defendant company, if any there be, in the hands of the persons named in the affidavits and which can not be reached by the ordinary processes of the law.

The situation briefly is this: The plaintiff was injured by the employee of the defendant company, whose assets at that time were approximately $100,000; since the injury the defendant company, with other similar companies, has disposed of its assets for the purpose of organizing the United Company. There has been an attempted payment for the assets of the defendant company by the issuance of the stock of the United Company

to the Fentons and Cross, who owned practically all of the stock of the defendant company. This stock of the United Company is the only payment made for the assets of the defendant company. No stock has been issued by the United Company to the Fenton company, in accordance with the terms of the contract of January 6, 1916. The stock so issued by the United company to the Fentons and Cross is still held by them.

What rights, if any, has the plaintiff in this case to the application of this last named stock to the payment of this judgment?

In the case of *Taylor* v. *Miami Exporting Company* and others 5 Ohio, 162, 165, in the opinion of the court by Judge Wright, concerning the liability of stockholders, we find the following:

"Judge Story, in the case of *Wood et al* v. *Deeman et al*, 3 Mason, 310, in discussing this subject says: 'It appears to me very clear, upon general principles, as well as the legislative intention, that the capital stock of banks is to be deemed a pledge or trust fund for the payment of the debts contracted by the bank. The public, as well as the Legislature, have always supposed this to be a fund appropriated for such purpose. The individual stockholders are not liable for the debts of the bank in their private capacities. The charter relieves them from personal responsibilities and substitutes the capital stock in its stead Credit is universally given to this fund by the public as the only means of repayment. During the existence of the corporation it is the sole property of the corporation, and can be applied only according to its charter; that is, as a fund for the payment of its debts, upon the security of which it may discount and circulate notes. Why, otherwise, is any capital stock required by our charters? If the stock may, the next day after it is paid, be withdrawn by the stockholders without payment of the debts of the corporation, why is its amount so studiously provided for, and its payment by the stockholders so diligently required? To me this point appears so plain, upon principles of law, as well as common sense, that I can not be brought into any doubt that the charters of our banks make the capital stock a trust fund for the payment of all the debts of the corporation. The bill

holders and other creditors have the first claim upon it; and the stockholders have no rights until all the other creditors are satisfied. They have the full benefit of all the profits made by the establishment, and can not take any portion of its funds until all the other claims upon it are extinguished. Their rights are not to the capital stock, but to the residuum after all the demands upon it are paid. On the dissolution of the corporation, the bill holders and stockholders have each equitable claims; but those of the bill holders possess, as I conceive, a prior exclusive equity. The same doctrine has been recognized by the Supreme Court of Massachusetts. 15 Mass. 505, 517, 522; 16 Mass. 9, 15. If I am right in this, the principal difficulty in this cause is overcome. If the capital stock is a trust fund, then it may be followed by the creditors into the hands of any person having knowledge of the trust attaching to it. As to the stockholders themselves, there can be no pretense to say that, both in law and fact, they are not affected with amply notice.' ''

In Vol. 2 Morawetz on Private Corporations (Second Edition), Section 954, under the sub-heading: "Effect of Consolidation upon Rights of Creditors,'' we find the following very pertinent statement of the law:

"Parties can not transfer their debts and liabilities to others, and thereby discharge themselves. Any state law purporting to authorize such a transaction would be unconstitutional, because impairing the obligation of contracts.

"It seems clear, therefore, that a corporation can not discharge its liabilities by transferring them to another company; and the creditors of a corporation can not be compelled by law to accept the liability of a new company, formed by the stockholders of several companies, in substitution of their original rights. "However, it does not follow from this, that corporations can not be consolidated without the consent of their creditors. A trading corporation, like a copartnership, may be dissolved by its members whenever they desire. The dissolution of a corporation, by surrender of its charter, does not destroy the claim of its creditors. Their remedy *at law* is, indeed, lost in such case, unless otherwise provided by statute; but the assets of the cor-

poration remain a trust fund for the payment of its debts. A consolidation involves the dissolution of the consolidating companies, and the formation of a new and enlarged corporation out of the stockholders of the old companies with their combined capital. Neither of these transactions can be prevented by creditors, inasmuch as their rights are not thereby invaded. The legal liability of the consolidated company would be substituted in place of the legal liability of each of the original companies to its creditors; and the creditors of each of the companies would retain their equitable right to the security furnished by the assets of the company with which they dealt. Liens upon the property of a corporation clearly remain binding after its consolidation with another company."

The case of *Pfisterer* v. *Traction Company*, 89 Ohio St., 172, has no application to this branch of this case as that was a proceeding against the new corporation for a liability of the old corporation, and the stockholders liabilities were not considered in that case.

In *Hageman* v. *Southern Electric Railroad Co. et al*, 202 Mo., 249, the facts were similar to those in the Pfisterer case, and while the court held that the new company was not liable for the debts of the old one, it used this very pertinent language on page 259 of the opinion:

" * * * her (plaintiff's) contention is, the obligations of the Southern company should follow its assets as trust funds into the hands of the united company. In order to support that contention she invokes the well-known principle of equity, that 'it is a favorite doctrine with the courts of equity that the capital stock and other property of a corporation is to be deemed, as between creditor sand stockholders, a trust fund for the payment of the debts; and when such property has been divided among the stockholders, leaving debts unpaid, the stockholders are in equity bound to refund.' (*Missouri Lead M. & S. Co.* v. *Reinhard*, 114 Mo. 1, c. 232; *Heman* v. *Britton*, 88 Mo., 549.)

"This rule has no application to the facts of this case. It applies to that class of cases where a corporation sells or disposes of all its property and divides the proceeds thereof among its stock-

holders, without making provision for the payment of its out-
standing obligations which existed at the time of the sale or the
disposition of its property.

"The united company, the defendant in the case at bar, has not
sold or disposed of its property, or distributed the proceeds there-
of to its stockholders, but, upon the other hand, the fact is, it pur-
chased the franchises, capital stock, money, choses in action,
and all the other real, personal and mixed property of the
Southern company in good faith and paid a sound price there-
for, namely, one hundred and forty dollars a share. It does
not stand in the same relation to the creditors of the Southern
company that the stockholders of the latter company do. It
has no property or money in its possession which it has not paid
full value for; while, upon the other hand, those stockholders
have in their hands the $2,000,000, the sum the United Company
paid them for the franchises, stock and properties of the South-
ern Company. That money is a trust fund for the payment of
the debts and obligations of the Southern company."

The case of *Railway Company* v. *Griest,* 85 Ky., 619, is similar
in its facts to the cases above mentioned. The syllabus in that
case is as follows:

"1.   Where one corporation sells to another all its property,
franchises, etc., under authority conferred by its charter, the
*bona fide* purchaser for value takes the property free from the
claims of creditors of the vendor who have no lien upon the prop-
erty, just as if it were an individual transaction.

"3.   Rights of Creditors of Dissolved Corporation.—When a
corporation has sold all its property, franchises, etc., and thus in
effect been dissolved, the creditors of the corporation may enforce
their demands in a court of equity, the proceeds of the property
being regarded as assets in the hands of the stockholders for the
payment of debts."

The Griest case was one in which injury had been suffered by
the plaintiff by the negligence of the Padacah & Elizabethtown
Railroad Company. Before he reduced his claim to judgment,
a consolidation was made between that company and the defend-

ant company and full value paid for the assets in money and bonds, and the holding was as above stated. See also *Bank et al* v. *Manufacturing Co.*, 67 O. S., 306.

These authorities are so clear as to the obligation of the Fentons and Cross (as the principal stockholders of the defendant company and the ones who are now holding the consideration paid by the United Company for the assets of the defendant company), to satisfy any claims against the defendant company at the time of the consolidation, not a lien, nor assumed by the United Company, that as to them and the stock now held by them in the United Company, the motion of the plaintiff will be granted.

The second ground of plaintiff's motion is for an order against the Fenton United Cleaning & Dyeing Company, to answer for the assets of the Fenton Dry Cleaning & Dyeing Company, defendant.

As heretofore stated, the contract between the various companies uniting to form the United Company and Mr. Morgan provided that the payment for the assets of the various companies should be made by the issuance to each of the corporations of stock of the United Company.

It is in evidence that no stock was issued by the United Company to the defendant company, but that certain stock, equaling in amount that which should have been issued to the defendant company, was, in fact, issued to the Fentons and Cross, and it is the latter stock which is involved in the former consideration of the court.

It is a familiar principle—

"That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded." *State ex rel.* v. *Standard Oil Co.*, 49 Ohio St., 137.

It is true that the Fentons and Cross were entitled to the residuum of the assets of the defendant company after the creditors had been satisfied; but until that had occurred they were not entitled to such residuum.

The purpose and duty of the court in this case is to execute its own judgment affirmed by the Court of Appeals, and it will apply any property brought within its reach for that purpose. The courts are not created merely to give judgments and to sit idly by while an attempt is being made, by those responsible to pay the judgment and who have the assets of the person or corporation owing the same, to avoid the payment.

As the contract has not been fulfilled according to its terms and meaning, the motion of the plaintiff for an order against the United Company will be granted.

As stated above, the Fidelity & Deposit Company not only appeared in court to defend the defendant company, as it agreed to do under its contract, but, after defense was at an end and the case was returned to this court for execution of the judgment, the Deposit Company, through its agent and attorney, came into this court, without employment by the defendant company, and resisted and is still resisting these equitable proceedings in aid of execution.

In any event, the plaintiff is entitled to collect her judgment out of the proceeds of the assets of the defendant company, whether these proceeds are now in the hands of the United Company or the Fentons and Cross. But the Fentons and Cross and the Deposit Company are in court in a combination and plan to attempt to defeat the satisfaction of this judgment.

Many cases were referred to in argument and on brief holding that a contract similar to the one in this case is not for the benefit of one injured, but is solely for the benefit of the insured, and that in no event is the insurer liable to the insured until he has suffered a loss by actual payment in some form to the injured party, and many cases have been cited which hold that in no event is the insurer liable to the injured party.

It is true that in numbers these decisions exceed those in which a contrary view has been taken.

Without undertaking to refer to the various decisions in detail, the court will satisfy itself by reference to the case of *Fidelity & Casualty Company* v. *Martin,* 163 Ky., 12, which holds that the contract, being one of indemnity, there is no right of recovery except upon actual loss paid by the insured, and that the defense by the insurer, of the action on behalf of the insured does not change the legal obligation of the insurer. Most of the leading cases in support of the Kentucky case are referred to in the opinion of the court in that case and no further reference need be made to them here. However, that case would be of greater force and more convincing but for the view expressed by the court on page 29:

" * * * *that the purpose of the insurance company in framing its contract, as was done in that case (Sanders* v. *Frankfort Ins. Co., 72 N. H., 482) and the instant case, was not so much to require a solvent assured to first pay the judgment, as to prevent itself from being subrogated to a loss which an insolvent assured was relieved by his insolvency, from paying.*"

If the insurance company, in framing its policies, had in mind the taking of the premiums from insolvent persons, and being relieved from payment because of the insolvency, the whole contract was a fraud and would be against public policy.

It should be further said that the decision of the court in the Kentucky case is dissented from by Judges Nunn and Hannah.

The contrary view has been taken by a number of courts, some of them overruling, others modifying, earlier cases, but there seems to be a growing tendency to hold the insurance company for the amount of the policy, though the loss has not actually been paid, where the company takes upon itself the entire responsibility of the defense and excludes the insured from any participation therein. These cases are: *Patterson* v. *Adan,* 119 Minn., 308; *Davies* v. *Maryland Casualty Co.,* 154 Pac. (Wash.)

1116; *Elliott* v. *Aetna Life Ins. Co.*, 161 N. W. (Neb.), 579; *Sanders* v. *Insurance Co.*, 72 N. H., 485.

In the examination of the authorities no case has been found in which the insurance company has gone to the extent that the deposit company in this case to defeat the plaintiff and obstruct the execution of the judgment of this court, and if there is any force or effect in the reasoning of the cases last referred to it should apply doubly to a situation such as we. have here. In effect, the Deposit Company, after defending the defendant company and prosecuting its proceedings in error to the Court of Appeals, comes back into this court and seeks to avoid its liability under its policy by keeping those responsible under this judgment from paying the same.

The moment the defendant company or those having its assets pay this judgment, that moment, it is admitted by the Deposit Company, it would be liable under the contract, and it is seeking to avoid this responsibility by the methods above suggested.

This court has no disposition to undertake to make a contract for the parties, but it will undertake to enforce the contract, as it has been treated by the parties, in which the deposit company has assumed the responsibility of seeking to avoid the satisfaction of the judgment after full defense has been made, which, in any view of the case, was all that was contemplated by its contract.

If it is the law of this state that an insurer can conduct itself as has been done in this case and escape from the effect of its own action in resisting payment of the judgment, some other court will have to decide it.

While it is not a case which bears directly upon the case at bar, *Boehnke* v. *Traction Company*, 88 Ohio St., 156, is an illuminating case upon the proposition that where one goes into court and assumes the defense of a case of another party, he may be held to answer for the judgment of the court.

It follows that the motion of the plaintiff for an order upon the Fidelity & Deposit Company of Maryland to answer under its policy will be granted.

Plaintiff may draw an order in conformity with the foregoing ruling, and, acting under the authority of the statute, the court will appoint William A. Geoghegan, receiver, to take charge of such assets and subject them to payment of the judgment, and an order will be made restraining Fenton and Cross, from transferring, assigning or in any way disposing of the certificates for the shares of stock now standing in their names and issued by the Fenton United Cleaning & Dyeing Company, and also from collecting any dividends upon said stock. An order may be taken against the Fenton United Cleaning & Dyeing Company, restraining it from transferring any of the said stock so held by Fenton and Cross, and from paying any dividends on such stock to them or either of them, and from in anywise disposing of the assets of the defendant, the Fenton Dry Cleaning & Dyeing Company.